Melissa H. Sargeant
HI BAR No. 6202
Seaport Law Group, LLC
503 Seaport Ct, Ste. 103 Redwood City, CA 94063
(650) 293-0270 (Telephone)
(650) 249-3466 (Facsimile)
attorney@seaportlg.com (Email)

Attorney for Petitioner-Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.A.D,<br><br>　　　　　Petitioner -Plaintiff,<br>　　Vs.<br><br>Sergio ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office<br><br>Todd M. LYONS, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security;<br><br>Kristi NOEM, in her Official Capacity, Secretary, U.S. Department of Homeland Security; and<br><br>Pamela BONDI, in her Official Capacity, Attorney General of the United States;<br><br>Respondents-Defendants. | Case No. 3:25-cv-09837<br><br>**PETITIONER'S NOTICE OF MOTION AND EMERGENCY EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Challenge to Unlawful Incarceration; Request for Declaratory and Injunctive Relief<br><br>Date:<br>Time:<br>Crtrm: |

## <u>NOTICE OF MOTION AND EX PARTE MOTION</u>

PLEASE TAKE NOTICE as soon as it may be heard in the United States District Court for the Northern District of California, that Petitioner Francisco Amezquita Diaz will and hereby does move for a temporary restraining order pursuant to Federal Rules of Civil Procedure 65(b) and Civil Local Rule 65-1.  Because Petitioner's detention violates the Due Process Clause of the Fifth Amendment to the United States, Petitioner respectfully requests that this Court (1) orders Petitioner's immediate release from Respondent's custody pending these proceedings, without requiring bond or electronic monitoring, or, in the alternative, (2) orders Petitioner's immediate release from Respondents' custody and, within 14 days, order a pre-deprivation bond hearing before the San Francisco Immigration Court, where Respondents will have the burden of proof to show, by clear and convincing evidence, that Petitioner is a danger or a flight risk. To preserve this Court's jurisdiction, Petitioner further seeks an order (3) enjoining Respondents from transferring Petitioner out of this District or deporting him during the pendency of this proceeding.  enjoins Respondents (1) from continuing to detain Petitioner based on an unlawful action by ICE, (2) orders his immediate release from Respondents' custody; and (3) from re-arresting Francisco Amezquita Diaz until he is afforded a hearing before a neutral decisionmaker, as required by the Due Process clause of the Fifth Amendment, to determine whether circumstances have materially changed such that his re-incarceration would be justified because there is clear and convincing evidence establishing that he is a danger to the community or a flight risk.

Consistent with Civil L.R. 65-1, Petitioner seeks relief at the earliest possible opportunity. Petitioner filed this motion one day after he filed his Petition for Writ of Habeas Corpus. His Write of Habeas Corpus stated that he would be filing this motion forthwith.

If the Court deems oral argument necessary, Petitioner requests to appear by video.

Dated: November 15, 2025          Respectfully submitted,


                                  */s/ Melissa H Sargeant*
                                  Melissa H. Sargeant
                                  Attorney for Petitioner-Plaintiff  Francisco Amezquita Diaz

## I.     **INTRODUCTION**

Respondents unlawfully detained Petitioner-Plaintiff Francisco Amezquita Diaz yesterday, November 14, 2025. Francisco Amezquita Diaz was detained during his 245i Adjustment of Status interview at San Francisco USCIS. He has not received a Notice to Appear (NTA) for removal proceedings in immigration court pursuant to Section 240 of the Immigration and Nationality Act (INA) (section 240 proceedings). He was given a Warrant for arrest after he was taken to the ICE Enforcement and Removal Center at 630 Sansome St. San Francisco, CA.      Francisco Amezquita Diaz entered the US multiple times beginning in 1987 on a visitor visa from his home country of Mexico. He has resided full time in the US since 1993.

He retained the undersigned to file a I-130 petition sponsored by his adult US citizen daughter concurrently with a 245i Adjustment of Status I-485 application.  Said petitions have been pending over 3.5 years. He is not an applicant for admission to the United States,

Francisco Amezquita Diaz has lived in the United States for over 30 years. He has two United States citizen children. At the time of detention, Francisco Amezquita Diaz was working on his USCIS approved employment authorization document (EAD card) full time at Costco.

Francisco Amezquita Diaz's summary arrest and indefinite detention flout the Constitution. The *only* legitimate interests that civil immigration detention serves are mitigating the risk of flight and preventing danger to the community. When those interests are absent, the Fifth Amendment's Due Process Clause squarely prohibits detention. Additionally, by summarily arresting and detaining Francisco Amezquita Diaz without making any affirmative showing of immigration violations, flight risk or danger to the community, the government violated Petitioner's procedural due process rights. At the very least, he was constitutionally entitled to a hearing before a neutral decisionmaker at which the government should have justified his detention.

Francisco Amezquita Diaz must be accorded his 5th amendment due process rights as affirmed in the US Supreme Court case *Department of Homeland Security v. Thuraissigium*, 140 S.Ct. 1959 (2020), Specifically, in *Thuraissigium*, the Supreme Court Stated: "aliens who have established connections in this country have due process rights in deportation proceedings,"

As a result of his arrest and detention, Francisco Amezquita Diaz is suffering irreparable and ongoing harm. The unconstitutional deprivation of "physical liberty" unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017). Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Francisco Amezquita Diaz's arrest and detention have caused and will cause immediate, tremendous, and ongoing harm, which includes hygiene, sleep, and nutrition deprivation, family separation, emotional and economic harm to USC children, loss of employment, and psychological harm.

In light of this irreparable harm, and because he is likely to succeed on the merits of his due process claims, Francisco Amezquita Diaz respectfully requests that this Court issue an Ex parte temporary restraining order ("TRO") immediately releasing him from custody and enjoining the government from re-arresting him absent the opportunity to contest that arrest at a hearing before a neutral decision maker. Confronted with substantially identical facts and legal issues, this and other courts in this circuit have recently granted the exact relief Petitioner seeks. *See J.O.L.R. v Wofford,* 2025 WL 2718631 * 11 (E.D. Cal Sept. 23, 2025); *R.D.T.M. v Wofford,* 2025 WL 2617255 * 11 (E.D. Cal Sept. 9, 2025), *Garro Pinchi v. Noem*, 2025 WL 1853763, *4 (N.D. Cal. July 4, 2025), *converted to preliminary injunction at __ F. Supp. 3d __, 2025 WL 2084921 (N.D. Cal. July 24, 2025); *Singh v. Andrews*, 2025 WL 1918679, *10 (E.D. Cal. July

11, 2025) (granting preliminary injunction).

To maintain this Court's jurisdiction, the Court should also prohibit the government from transferring Francisco Amezquita Diaz out of this District and removing him from the country until these proceedings have concluded.

## II.    STATEMENT OF FACTS AND CASE

Since mid-May 2025, DHS has initiated an aggressive new enforcement campaign targeting people who are not in status, many of whom have pending applications for asylum or other relief. This "coordinated operation" is "aimed at dramatically accelerating deportations" by arresting people at the courthouse, USCIS interviews, or at the ICE office and placing them into expedited removal.  The Trump administration implemented a policy to drastically increase immigration arrests to a target of at least 3,000 per day. According to White House officials, such as Stephen Miller, this directive prioritized arrest numbers over individuals' criminal histories, encouraging agents to conduct mass round-ups in public spaces rather than targeted investigations.

As a result, arrests of non-citizens with no criminal record surged by over 800%, and two-thirds of those deported had no criminal history. This focus on quantity over public safety led to a new and aggressive tactic: systematically arresting immigrants at courthouses and ICE appointments, regardless of the status of their legal cases. This has created a climate of fear, discouraging people from attending their mandatory hearings or ICE appointments.

In addition, individuals are now held for extended periods, sometimes days, in temporary holding cells that are not designed for overnight or prolonged detention, often under inhumane conditions. Government officials have justified these harsh conditions not as a matter of necessity, but as an intentional deterrent, which is not a constitutionally permissible reason for detention.

Francisco Amezquita Diaz has lived in the United States for over 30 years. He has two United States citizen children. At the time of detention, Francisco Amezquita Diaz was working on his USCIS approved employment authorization document (EAD card) full time at Costco. Apart from an arrest with a fine paid in 1995 for a fight over child visitation of his daughter, he has no criminal record. He is an active member of his church, St. Mark's Roman Catholic Church Iglesia Catolica San Marcos, where he has been an esteemed congregant for over 20 years. He has established strong connections to the United States.

Francisco Amezquita Diaz's arrest and detention have caused and will cause immediate, tremendous, and ongoing harm, which includes hygiene, sleep, and nutrition deprivation, family separation, emotional and economic harm to his family and USC children, loss of employment, and psychological harm. Francisco Amezquita Diaz is not a flight risk, as evidenced by his deep ties to the community, including his relatives in the US and his children. He is not a danger to the community. He is a law abiding, tax paying, and gainfully employed person. His detention serves no legitimate purpose.

This case has substantial factual and legal support to be granted, resulting in Francisco Amezquita Diaz 's release from custody, and enjoining DHS from detaining Francisco Amezquita Diaz pending a hearing before a neutral adjudicator, to substantiate a material change in circumstances indicating that Francisco Amezquita Diaz is either a flight risk or a danger to the community.

Intervention from this Court is therefore required to ensure that Francisco Amezquita Diaz is released from his current custody based on his unlawful arrest, returned to his home in Union City, California, where ICE can then provide him with a hearing before determining to re-arrest him pursuant to the Due Process Clause of the Fifth Amendment.

## III.     LEGAL STANDARD

Francisco Amezquita Diaz is entitled to a temporary restraining order if he establishes that he is "likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [his] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical"). Even if Francisco Amezquita Diaz does not show a likelihood of success on the merits, the Court may still grant a temporary restraining order if he raises "serious questions" as to the merits of his claims, the balance of hardships tips "sharply" in his favor, and the remaining equitable factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). As set forth in more detail below, Francisco Amezquita Diaz  overwhelmingly satisfies both standards.

Furthermore, the requirements for issuing a temporary restraining order without notice are met here. *See* Fed. R. Civ. P. 65(b). Francisco Amezquita Diaz notified respondents' on November 14, 2025, that he would be filing the motion by email for habeas petition filings. Francisco Amezquita Diaz also set out specific facts demonstrating that immediate and irreparable injury, loss, or damage may result before respondents can be heard in opposition. *See Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025); *J.O.L.R. v Wofford,* 2025 WL 2718631 * 11 (E.D. Cal Sept. 23, 2025); *R.D.T.M. v Wofford,* 2025 WL 2617255 * 11 (E.D. Cal Sept. 9, 2025)(granting ex parte temporary restraining order in similar circumstances).

IV.    **ARGUMENT**

   **A. Francisco Amezquita Diaz WARRANTS A TEMPORARY RESTRAINING ORDER**

A temporary restraining order should be issued if "immediate and irreparable injury, loss, or irreversible damage will result" to the applicant in the absence of an order. Fed. R. Civ. P. 65(b). The purpose of a temporary restraining order is to prevent irreparable harm before a preliminary injunction hearing is held. *See Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda City*, 415 U.S. 423, 439 (1974). Francisco Amezquita Diaz is likely to remain in unlawful custody in violation of his due process rights without intervention by this Court. Francisco Amezquita Diaz will continue to suffer irreparable injury if he continues to be detained without due process.

## 1.    Francisco Amezquita Diaz is likely to succeed on the merits because Francisco Amezquita Diaz's detention violates substantive due process.

The Due Process Clause applies to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "The touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

To comply with substantive due process, the government's deprivation of an individual's liberty must be justified by a sufficient purpose. Therefore, immigration detention, which is "civil, not criminal," and "nonpunitive in purpose and effect," must be justified by either (1) dangerousness or (2) flight risk. *Zadvydas*, 533 U.S. at 690; *see Hernandez*, 872 F.3d at 994 ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration

proceedings can be reasonably ensured by a lesser bond or alternative conditions."). When these rationales are absent, immigration detention serves no legitimate government purpose and becomes impermissibly punitive, violating a person's substantive due process rights. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972) (detention must have a "reasonable relation" to the government's interests in preventing flight and danger); *see also Mahdawi v. Trump*, No. 2:25-CV-389, 2025 WL 1243135, at *11 (D. Vt. Apr. 30, 2025) (ordering release from custody after finding petitioner may "succeed on his Fifth Amendment claim if he demonstrates *either* that the government acted with a punitive purpose *or* that it lacks any legitimate reason to detain him").

The Supreme Court has recognized that noncitizens may bring as-applied challenges to detention, including so-called "mandatory" detention. *Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."); *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) ("Our decision today on the meaning of [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it.").

Francisco Amezquita Diaz is neither a danger nor a flight risk. Therefore, his detention is both punitive and not justified by a legitimate purpose, violating his substantive due process rights. Francisco Amezquita Diaz's ongoing detention is unconstitutional, and substantive due process principles require his immediate release.

**2. Francisco Amezquita Diaz is Likely to Succeed on the Merits of His Claim That in This Case the Constitution Requires a Hearing Before a Neutral Adjudicator Prior to Any Re-Incarceration by ICE.**

Francisco Amezquita Diaz is likely to succeed on his claim that, in his particular circumstances, his current detention is unlawful because the Due Process Clause of the Constitution prevents Respondents from detaining him without first providing a pre-deprivation hearing before a neutral adjudicator where the government demonstrates by clear and convincing evidence that he is a danger to the public or a flight risk.

Courts analyze procedural due process claims, such as this one, in two steps: the first asks whether a protected liberty interest exists under the Due Process Clause, and the second examines the procedures necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

### a. Francisco Amezquita Diaz Has a Protected Liberty Interest

The Due Process Clause protects Francisco Amezquita Diaz's liberty from immigration custody: "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Francisco Amezquita Diaz established a life in California. Francisco Amezquita Diaz has lived in the United States for over 30 years. He has two United States citizen children. At the time of detention, Francisco Amezquita Diaz was working on his USCIS approved employment authorization document (EAD card) full time at Costco.  Apart from an arrest with a fine paid in 1995 for a fight over child visitation of his daughter, he has no criminal record. He is an active member of his church, where he has been an esteemed congregant for over 20 years. His church has added him to their prayer list and the members are actively praying for his release at this time.

### b. Francisco Amezquita Diaz's Liberty Interest Mandates His Release from Unlawful Custody And A Hearing Before any Re-Arrest.

Francisco Amezquita Diaz asserts that, here, (1) where his detention would be civil; (2) where he has viable immigration relief; (3) where no circumstances exist that would justify his lawful detention; and (4) where ICE's move to arrest as many people as possible under the new administration's initiative, due process mandates that he be released from his unlawful custody and receive notice and a hearing before a neutral adjudicator *before* any re-arrest or revocation of his custody release.

"Adequate, or due, process depends upon the nature of the interest affected. The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards the [government] must provide to satisfy due process." *Haygood v. Younger*, 769 F.2d 1350, 1355-56 (9th Cir. 1985) (en banc) (citing *Morrissey v. Brewer*, 408 U.S. 471, at 481-82 (1972)). This Court must "balance [Francisco Amezquita Diaz's] liberty interest against the [government's] interest in the efficient administration of" its immigration laws to determine what process he is owed to ensure that ICE does not unconstitutionally deprive him of his liberty. *Id*. at 1357. Under the test outlined in *Mathews v. Eldridge*, this Court must consider three factors in conducting its balancing test: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Haygood*, 769 F.2d at 1357 (*citing Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Only in a "special case" where post-deprivation

remedies are "the only remedies the State could be expected to provide" can the post-deprivation process satisfy the requirements of due process. *Zinermon*, 494 U.S. at 985. Moreover, only where "one of the variables in the *Mathews* equation—the value of predeprivation safeguards—is negligible in preventing the kind of deprivation at issue" such that "the State cannot be required constitutionally to do the impossible by providing predeprivation process," can the government avoid providing pre-deprivation process. *Id.*

Because, in this case, the provision of a pre-deprivation hearing is both possible and valuable to preventing an erroneous deprivation of liberty, ICE is required to provide Francisco Amezquita Diaz with notice and a hearing *prior* to any incarceration. *See Morrissey*, 408 U.S. at 481-82; *Haygood*, 769 F.2d at 1355-56; *Jones*, 393 F.3d at 932; *Zinermon*, 494 U.S. at 985; *see also Youngberg v. Romeo*, 457 U.S. 307, 321-24 (1982). Under *Mathews*, "the balance weighs heavily in favor of [Francisco Amezquita Diaz's] liberty" and requires a pre-deprivation hearing before a neutral adjudicator.

### i. Francisco Amezquita Diaz's Private Interest in His Liberty is Profound.

What is at stake in this case for Francisco Amezquita Diaz is one of the most profound individual interests recognized by our legal system: whether ICE may unilaterally detain a non-citizen and be able to take away his physical freedom, i.e., his "constitutionally protected interest in avoiding physical restraint." *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (internal quotation omitted). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). *See also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Cooper v. Oklahoma*, 517 U.S. 348 (1996).

Thus, it is clear that there is a profound private interest at stake in this case, which must be weighed heavily when determining what process he is owed under the Constitution. *See Mathews*, 424 U.S. at 334-35.

### ii.    The Government's Interest in Incarcerating Francisco Amezquita Diaz Without a Hearing is Low and the Burden on the Government to Refrain from Re-Arresting Him Unless and Until He is Provided a Hearing is Minimal

The government's interest in maintaining an unlawful detention without a due process hearing is low, and when weighed against Francisco Amezquita Diaz's significant private interest in his liberty, the scale tips sharply in favor of enjoining Respondents (1) from keeping him in unlawful custody; (2) re-arresting Francisco Amezquita Diaz unless and until the government demonstrates to a neutral adjudicator by clear and convincing evidence that he is a flight risk or danger to the community; and (3) removing him from the United States in violation of an agency order and district court injunction. It becomes abundantly clear that the *Mathews* test favors Francisco Amezquita Diaz when the Court considers that the process he seeks—notice and a bond hearing before a neutral decision maker  —is a standard course of action for the government. Providing Francisco Amezquita Diaz with a hearing before this Court (or a neutral decision maker) to determine whether there is clear and convincing evidence that Francisco Amezquita Diaz is a flight risk or danger to the community would impose only a *de minimis* burden on the government, because the government routinely provides this sort of hearing to individuals like Francisco Amezquita Diaz

As immigration detention is civil in nature, it cannot serve a punitive purpose. The government's only interest in holding an individual in immigration detention can be to prevent danger to the community or to ensure a noncitizen's appearance at immigration proceedings. *See Zadvydas*, 533 U.S. at 690. In this case, the government cannot plausibly assert that it has

any basis for detaining Francisco Amezquita Diaz since has lived at liberty with his community, without any criminal or civil traffic infractions for the past 25 years.

The government's interest in detaining Francisco Amezquita Diaz at this time is extremely low. That ICE has a new policy to make a minimum number of arrests each day under the new administration does not constitute a valid reason to detain him.[1]

Moreover, the "fiscal and administrative burdens" that his immediate release and a lawful pre-detention hearing would impose is nonexistent in this case. *See Mathews*, 424 U.S. at 334-35. Francisco Amezquita Diaz does not seek a unique or expensive form of process, but rather a routine hearing.  As the Ninth Circuit noted in 2017, which remains true today, "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million." *Hernandez*, 872 F.3d at 996.  It is only fair to say these costs have increased in the past 8 years,

Alternatively, providing Francisco Amezquita Diaz with a hearing before this Court (or a neutral decision-maker) regarding release from custody is a routine procedure that the government provides to those in immigration detention facilities daily. At that hearing, the Court would have the opportunity to determine whether circumstances justify his arrest and detention. But there is no justifiable reason to incarcerate Francisco Amezquita Diaz before such a hearing takes place.

---

[1] *See* "Trump officials issue quotas to ICE officers to ramp up arrests," *Washington Post* (January 26, 2025), available at: https://www.washingtonpost.com/immigration/2025/01/26/ice-arrests-raids-trump-quota/.; "Stephen Miller's Order Likely Sparked Immigration Arrests And Protests," Forbes (June 9, 2025), https://www.forbes.com/sites/stuartanderson/2025/06/09/stephen-millers-order-likely-sparked-immigration-arrests-and-protests/  ("At the end of May 2025, 'Stephen Miller, a senior White House official, told Fox News that the White House was looking for ICE to arrest 3,000 people a day, a major increase in enforcement. The agency had arrested more than 66,000 people in the first 100 days of the Trump administration, an average of about 660 arrests a day,' reported the New York Times. Arresting 3,000 people daily would surpass 1 million arrests in a calendar year.").

Releasing Francisco Amezquita Diaz from unlawful custody and enjoining Francisco Amezquita Diaz's arrest until ICE (1) moves for a custody re-determination before an IJ and (2) demonstrates by clear and convincing evidence that Francisco Amezquita Diaz is a flight risk or danger to the community is far *less* costly and burdensome for the government than keeping him detained to a total daily cost of over $6.5 million. *Hernandez*, 872 F.3d at 996.

### iii. Without a Due Process Hearing Prior to Any Arrest, the Risk of an Erroneous Deprivation of Liberty is High, and Process in the Form of a Constitutionally Compliant Hearing Where ICE Carries the Burden Would Decrease That Risk.

Releasing Francisco Amezquita Diaz from unlawful custody and providing Francisco Amezquita Diaz a pre-deprivation hearing would decrease the risk of him being erroneously deprived of his liberty. Before Francisco Amezquita Diaz can be lawfully detained, he should have been provided with a hearing before a neutral adjudicator at which the government is held to show that there are sufficient circumstances to detain him. Clear and convincing evidence exists to establish that Francisco Amezquita Diaz is a not danger to the community or a flight risk.

The procedure Francisco Amezquita Diaz seeks—a hearing in front of a neutral adjudicator at which the government must prove by clear and convincing evidence to justify his detention. "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). The Ninth Circuit has noted that the risk of an erroneous deprivation of liberty under *Mathews* can be decreased where a neutral decisionmaker, rather than ICE alone, makes custody determinations. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1091-92 (9th Cir. 2011).

Due process also requires consideration of alternatives to detention at any custody redetermination hearing that may occur. The primary purpose of immigration detention is to ensure a noncitizen's appearance during removal proceedings. Zadvydas, 533 U.S. at 697.

Detention is not reasonably related to this purpose if there are alternatives to incarceration that could mitigate the risk of flight. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Accordingly, alternatives to detention must be considered in determining whether Francisco Amezquita Diaz's reincarceration is warranted.

As the above-cited authorities show, Francisco Amezquita Diaz is likely to succeed on his claim that the current arrest and detention that ICE effected today, November 14, 2025, are unlawful. The Due Process Clause requires notice and a hearing before a neutral decision-maker before any reincarceration by ICE. And, at the very minimum, he clearly raises serious questions regarding this issue, thus also meriting a TRO. *See Alliance for the Wild Rockies*, 632 F.3d at 1135.

### 3. Francisco Amezquita Diaz Will Suffer Irreparable Harm Absent Injunctive Relief

Francisco Amezquita Diaz will suffer irreparable harm if he remains detained after being deprived of his liberty and subjected to unlawful incarceration by immigration authorities without being provided the constitutionally adequate process that this motion for a temporary restraining order seeks. Detainees in ICE custody are held in "prison-like conditions." *Preap v. Johnson*, 831 F.3d 1193, 1195 (9th Cir. 2016). As the Supreme Court has explained, "[t]he time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness." *Barker v. Wingo*, 407 U.S. 514, 532-33 (1972); *accord Nat'l Ctr. for Immigrants Rights, Inc. v. I.N.S.*, 743 F.2d 1365, 1369 (9th Cir. 1984).

Moreover, the Ninth Circuit has recognized in "concrete terms the irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and

their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez*, 872 F.3d at 995.

The government itself has documented alarmingly poor conditions in ICE detention centers. *See, e.g.*, DHS, Office of Inspector General (OIG), Summary of Unannounced Inspections of ICE Facilities Conducted in Fiscal Years 2020-2023 (2024) (reporting violations of environmental health and safety standards; staffing shortages affecting the level of care detainees received for suicide watch, and detainees being held in administrative segregation in unauthorized restraints, without being allowed time outside their cell, and with no documentation that they were provided health care or three meals a day).[2] Conditions at the California City Detention Facility - one of the detention centers that Plaintiff would likely be sent to - are so inhumane that the ACLU just this week filed a Class Action lawsuit in this Federal District detailing the grotesque, inhumane, and substandard conditions of the facility. *Gomez Ruiz v. U.S. Immigration and Customs Enforcement*, (N.D. Cal. Case 3:25-cv-09757, filed 11/12/25).

As detailed *supra*, Petitioner contends that his arrest, absent a hearing before a neutral adjudicator, violates his due process rights under the Constitution. It is clear that "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, a temporary restraining order is necessary to prevent Francisco Amezquita Diaz from suffering irreparable harm by being subject to unlawful and unjust detention.

### 4. The Balance of Equities and the Public Interest Favor Granting the Temporary Restraining Order.

The balance of equities and the public interest undoubtedly favor granting this temporary

---

[2] Available at https://www.oig.dhs.gov/sites/default/files/assets/2024-09/OIG-24-59-Sep24.pdf (last accessed Feb. 6, 2024).

restraining order.  First, the balance of hardships strongly favors Francisco Amezquita Diaz. The government cannot suffer harm from an injunction that prevents it from engaging in an unlawful practice. *See Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). Therefore, the government cannot allege harm arising from a temporary restraining order or preliminary injunction ordering it to comply with the Constitution.

Further, any burden imposed by requiring the ICE to release Francisco Amezquita Diaz from  unlawful custody and refrain from re-arrest unless and until he is provided a hearing before a neutral is both *de minimis* and clearly outweighed by the substantial harm he will suffer as if he is detained. *See Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) ("Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required.").

A temporary restraining order is in the public interest. First and most importantly, "it would not be equitable or in the public's interest to allow [a party] . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). If a temporary restraining order is not entered, the government would effectively be granted permission to detain Francisco Amezquita Diaz  in violation of the requirements of Due Process. "The public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights.'" *Ariz. Dream Act Coal.*, 757 F.3d at 1069 (quoting *Melendres*, 695 F.3d at 1002); *see also Hernandez*, 872 F.3d at 996 ("The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of bonds established by a likely unconstitutional process."); *cf. Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been

violated, because all citizens have a stake in upholding the Constitution.").

Therefore, the public interest overwhelmingly favors entering a temporary restraining order and preliminary injunction.

**IV.    <u>CONCLUSION</u>**

For all the above reasons, this Court should find:

(1) that Francisco Amezquita Diaz warrants a temporary restraining order and a preliminary injunction ordering that Respondents Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;

(2) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately and schedule a bond hearing before an immigration judge;

(3) Declare immediately that Defendants are prohibited from moving Petitioner outside of the jurisdiction of the Northern District of California and enjoin Defendants from sending him to any place outside of the United States;

(4) Enjoin defendant from redetaining Petitioner without a pre-deprivation hearing before an immigration judge where the Government bears the burden of proving that circumstances have materially changed, rendering Petitioner a danger to the community or a flight risk;

(5) Order Defendants to file a written declaration attesting to full compliance with these obligations.

(6) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(7) Grant any further relief this Court deems just and proper.

Dated: November 15, 2025                          Respectfully submitted,
                                                                  */s/ Melissa H Sargeant*

                                                                  Melissa H. Sargeant
                                                                  Attorney for Petitioner-Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER