CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
WILLIAM SKEWES-COX (DCBN 1780431)
Special Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-7066
Facsimile:  (415) 436-7234
Email:  William.skewes-cox@usdoj.gov

Attorneys for Respondents-Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANCISCO AMEZQUITA DIAZ,<br><br>     Petitioner-Plaintiff,<br><br>  v.<br><br>SERGIO ALBARRAN, et al.,<br><br>     Respondents-Defendants. | CASE NO. 3:25-cv-09837-JSC<br><br>**RESPONDENTS' OPPOSITION TO EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Hon. Jacqueline Scott Corley |

# **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................1

II. STATUTORY BACKGROUND .........................................................................................2

   A. "Applicants for Admission" Under 8 U.S.C. § 1225 ....................................................2

   B. Detention Under 8 U.S.C. § 1225 .................................................................................2

      1. Section 1225(b)(1) ................................................................................................2

      2. Section 1225(b)(2) ................................................................................................3

   C. Detention Under 8 U.S.C. § 1226(a) .............................................................................3

III. FACTUAL BACKGROUND ..............................................................................................6

IV. PROCEDURAL BACKGROUND .......................................................................................6

V. ARGUMENT .......................................................................................................................6

   A. Legal Standard ..............................................................................................................6

   B. Petitioner Cannot Show a Likelihood of Success on the Merits....................................7

      1. Under the Plain Text of § 1225, Petitioner Must Be Detained Pending the Outcome of His Removal Proceedings.................................................................7

      2. A Narrow Interpretation of "Seeking Admission" Runs Counter to Congress's Use of the Phrase "Or Otherwise" in § 1225(a)(3) ...............................................10

      3. "Seeking Admission" Is Not Limited to Aliens Who Take Action Toward Admission .........12

      4. To Apply § 1225(b)(2) Narrowly to "Arriving Aliens" Runs Counter to Congress's Specific Use of "Arriving Aliens" Elsewhere in § 1225 .......................................13

      5. The INA's Implementing Regulations Are Contrary to the Court's Narrow View That § 1225(b)(2) Applies Only to Arriving Aliens .................................................14

      6. Petitioner Does Not Have a Liberty Interest Here .................................................15

      7. Congress Did Not Intend to Treat Individuals Who Unlawfully Enter the Country Better than Those Who Appear at a Port of Entry.................................................15

      8. Petitioner Cannot Establish Irreparable Harm ......................................................16

      9. The Balance of Equities and Public Interest Do Not Favor an Injunction.............17

   C. Any Court Order Should Not Provide for Immediate Release and Should Not Reverse the Burden of Proof ......................................................................................................18

VI. CONCLUSION....................................................................................................................19

RESPONDENTS' OPPOSITION TO MOTION FOR TRO

3:25-cv-09837                                                    i

# TABLE OF AUTHORITIES

## Cases

*Assoc'd Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity*, 950 F.2d 1401 (9th Cir. 1991)........... 17

*Demore v. Kim*, 538 U.S. 510 (2003)................................................................................ 15, 17

*Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) .............................................. 1, 2, 9, 15, 16

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) ........................................................ 17

*Florida v. United States*, 660 F. Supp. 3d 1239 (N.D. Fla. 2023) ................................................. 5

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ................................................................ 7

*Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025).............. 8

*Javier Ceja Gonzalez v. Noem*, No. 5:25-cv-02054-ODW (C.D. Cal. Aug. 13, 2025) ................................. 18

*Jennings v. Rodriguez*, 583 U.S. 281 (2018)..................................................................... passim

*Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022) ................................................................ 19

*Kucana v. Holder*, 558 U.S. 233 (2010)........................................................................... 2

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ....................................................... 4, 8

*Lopez Reyes v. Bonnar*, No 18-cv-07429-SK, 2018 WL 7474861 (N.D. Cal. Dec. 24, 2018)...................... 16

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) .................................................................. 6

*Ma v. Barber*, 357 U.S. 185 (1958)................................................................................ 15

*Marin All. For Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142 (N.D. Cal. 2011) ............................... 17

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th Cir. 2009) .................... 7

*Maryland v. King*, 567 U.S. 1301 (2012) ......................................................................... 18

*Matter of Guerra*, 24 I&N Dec. 37 (B.I.A. 2006) ............................................................... 4, 18

*Matter of Lemus*, 25 I & N Dec. 734 (BIA 2012)................................................................... 2

*Matter of M-S-*, 27 I&N Dec.509 (A.G. 2019) ..................................................................... 5

*Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025) ................................................................. 3, 12

*Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)................................................... passim

*Mendez v. ICE*, No. 23-cv-00829-TLT, 2023 WL 2604585 (N.D. Cal. Mar. 15, 2023) ........................... 7

*Meneses v. Jennings*, No. 21-cv-07193-JD, 2021 WL 4804293 (N.D. Cal. Oct. 14, 2021)................... 17

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021)...................................................................... 5

*Noem v. Vasquez  Perdomo*, 606 U.S. —, 2025 WL 2585637 (2025)................................................. 17

*Ortega-Cervantes v. Gonzales*, 501 F.3d 1111 (9th Cir. 2007)..................................................... 4

*Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025).............. 8

*Rodriguez Diaz v. Garland*, 53 F.4th 1206 (9th Cir. 2022)...................................................... 15, 19

*Salcedo Aceros v. Kaiser, et al.*, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025)................................. passim

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415 (9th Cir. 1984)................................... 7

*Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) ............................................................... 19

*Sixtos Chavez, et al. v. Kristi Noem, et al.*, No. 3:25-cv-02325-CAB-SBC (S.D. Cal. Sep. 24, 2025)............ 14

*Stanley v. Univ. of S. Cal.*, 13 F.3d 1313 (9th Cir. 1994) ....................................................... 7

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ...................................................... 17

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001)..................................... 6

*Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726 (9th Cir. 2011).............................................. 16

*Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) .................................................................. 16

*Ubiquity Press Inc. v. Baran*, No 8:20-cv-01809-JLS-DFM, 2020 WL 8172983 (C.D. Cal. Dec. 20, 2020) ........................................................................................................... 17

*United States v. Arango*, No. CV 09-178 TUC DCB, 2015 WL 11120855 (D. Ariz. Jan. 7, 2015) ........ 18

*Washington v. Chimei Innolux Corp.*, 659 F.3d 842 (9th Cir. 2011)............................................. 16

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) .......................................................... 18

*Winter v. NRDC*, 555 U.S. 7 (2008) .......................................................................... 6

*Zadvydas v. Davis*, 533 U.S. 678 (2001)....................................................................... 15

**Statutes**

8 U.S.C. § 1182(a)(6)(A)(i) ................................................................................. 1, 2, 3

8 U.S.C. § 1225(a)(1) .................................................................................. 1, 2, 11, 13

8 U.S.C. § 1225(b)....................................................................................... 18

8 U.S.C. § 1225(b)(1)(A)(i) ............................................................................... 3, 13

8 U.S.C. § 1225(b)(1)(A)(iii)............................................................................... 3

8 U.S.C. § 1225(b)(1)(B)(ii)............................................................................... 16

8 U.S.C. § 1225(b)(2).................................................................................... passim

RESPONDENTS' OPPOSITION TO MOTION FOR TRO
3:25-cv-09837                                                            iii

8 U.S.C. § 1225(b)(2)(A) ........................................................................................................ 3, 9, 14

8 U.S.C. § 1226(a) ........................................................................................................................ 3, 4

8 U.S.C. § 1229a ...................................................................................................................... 2, 3, 4

**Regulations**

8 C.F.R. § 1003.19 ........................................................................................................................... 4

8 C.F.R. § 1236.1(d)(1) ................................................................................................................... 4

8 C.F.R. § 235.3(b)(1)(i) ............................................................................................................... 14

8 C.F.R. § 235.3(b)(1)(ii) .............................................................................................................. 14

8 C.F.R. § 235.3(c)(1) ................................................................................................................... 14

8 C.F.R. § 236.1(c)(8) ..................................................................................................................... 3

8 C.F.R. § 236.1(d)(1) ..................................................................................................................... 4

## I.    INTRODUCTION

Petitioner Francisco Amezquita Diaz ("Petitioner") is a native and citizen of Mexico who entered the United States illegally in 1988 without inspection, admission, parole, or *any* interaction with United States immigration authorities. Petitioner lived in the United States illegally for decades until he applied for permanent resident status on March 17, 2022. As an "applicant[] for admission," Petitioner is subject to mandatory detention pending removal proceedings under 8 U.S.C. § 1225(b) and was taken into ICE custody on November 14, 2025. *See* 8 U.S.C. § 1225(a)(1); 8 U.S.C. § 1182(a)(6)(A)(i) (categorizing certain classes of aliens as inadmissible, and therefore ineligible to be admitted to the United States, including those "present in the United States without being admitted or paroled"); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–140 (2020) (an alien who is neither admitted nor paroled, nor otherwise lawfully present in this country, remains an "applicant for admission" who is "on the threshold" of initial entry, even if released into the country "for years pending removal," and continues to be "'treated' for due process purposes 'as if stopped at the border'"); *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (such aliens are "treated as 'an applicant for admission'").

"[A]pplicants for admission," which include aliens present without being admitted or paroled ("PWAP")—as is the circumstance with the Petitioner in this case— "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)," both of which are subject to mandatory detention. *Jennings*, 583 U.S. at 287 ("[R]ead most naturally, §§ 1225(b)(1) and (b)(2) mandate detention for applicants for admission until certain proceedings have concluded."). They are not entitled to custody redetermination hearings, whether pre- or post-detention, nor immediate release— all of which Petitioner asks for here. *Jennings*, 583 U.S. at 297 ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

Because Petitioner is subject to § 1225(b)(2), he cannot show a likelihood of success on his claim that he is entitled to release. The Court should deny Petitioner's request for a TRO.

RESPONDENTS' OPPOSITION TO MOTION FOR TRO
3:25-cv-09837                                                    1

## II.    STATUTORY BACKGROUND

### A.    "Applicants for Admission" Under 8 U.S.C. § 1225

The Immigration and Nationality Act ("INA") deems an "applicant for admission" to be an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1); *Thuraissigiam*, 591 U.S. at 140 ("an alien who tries to enter the country illegally is treated as an 'applicant for admission'") (citing 8 U.S.C. § 1225(a)(1)); *Matter of Lemus*, 25 I & N Dec. 734, 743 (BIA 2012) ("Congress has defined the concept of an 'applicant for admission' in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission[.]"). However long they have been in this country, an alien who is present in the United States but has not been admitted "is treated as 'an applicant for admission.'" *Jennings*, 583 U.S. at 287. Thus, for example, an "applicant for admission" includes certain classes of aliens that are inadmissible and therefore ineligible to be admitted to the United States under Section 212(a) of the INA, since those aliens are "present in the United States without being admitted or paroled[.]" 8 U.S.C. § 1182(a)(6)(A)(i).

### B.    Detention Under 8 U.S.C. § 1225

Applicants for admission, including those like Petitioner who are PWAP, may be removed from the United States by expedited removal under § 1225(b)(1), or full removal proceedings before an immigration judge under 8 U.S.C. § 1229a, pursuant to § 1225(b)(2). All applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)," both of which are subject to mandatory detention. *Jennings*, 583 U.S. at 287 ("[R]ead most naturally, §§ 1225(b)(1) and (b)(2) mandate detention for applicants for admission until certain proceedings have concluded.").

#### 1.    Section 1225(b)(1)

Congress established the expedited removal process in § 1225(b)(1) to ensure that the Executive could "expedite removal of aliens lacking a legal basis to remain in the United States." *Kucana v. Holder*, 558 U.S. 233, 249 (2010); *see also Thuraissigiam*, 591 U.S. at 106 ("[Congress] crafted a system for weeding out patently meritless claims and expeditiously removing the aliens making such claims from the country.").

This provision authorizes immigration officers to order certain inadmissible aliens "removed from the United States without further hearing or review." Section 1225(b)(1) applies to "arriving aliens" and "certain other" aliens who have been in the United States for less than two years and who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.*; 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii). Petitioner does not contend that he is subject to § 1225(b)(1).

### 2.    Section 1225(b)(2)

Section 1225(b)(2) is "broader" and "serves as a catchall provision" for all applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. Under Section 1225(b)(2), an alien "who is an applicant for admission" is subject to mandatory detention pending full removal proceedings "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (requiring that such aliens "be detained for a proceeding under section 1229a of this title"); *Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (BIA 2025) (proceedings under section 1229a are "full removal proceedings under section 240 of the INA"); *see also id.* ("[F]or aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, [] 8 U.S.C. § 1225(b)(2)(A) [] mandates detention 'until removal proceedings have concluded.'") (citing *Jennings*, 583 U.S. at 299).

Noncitizens "present in the United States without being admitted or paroled" are inadmissible—and therefore ineligible to be admitted to the United States—under Section 212(a) of the INA, 8 U.S.C. § 1182(a). *Id.* § 1182(a)(6)(A)(i).

### C.    Detention Under 8 U.S.C. § 1226(a)

A different statutory detention authority, 8 U.S.C. § 1226, applies to aliens who have been lawfully admitted into the U.S. but are deportable and subject to removal proceedings. Section 1226(a) provides for the arrest and detention of these aliens [on a warrant] "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Under § 1226(a), DHS may, in its discretion, detain an alien during his removal proceedings, release him on bond, or release him on conditional parole. By regulation, immigration officers can release an alien if he demonstrates that he "would not pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

RESPONDENTS' OPPOSITION TO MOTION FOR TRO
3:25-cv-09837                                    3

An alien can also request a custody redetermination (*i.e.*, a bond hearing) by an immigration judge at any time before a final order of removal is issued. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1003.19. At a custody redetermination, the immigration judge may continue detention or release the alien on bond or conditional parole.[1] By regulation, immigration officers can release an alien if he demonstrates that he "would not pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). An alien can also request a custody redetermination (*i.e.*, a bond hearing) by an IJ at any time before a final order of removal is issued. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1003.19. At a custody redetermination, the IJ may continue detention or release the alien on bond or conditional parole. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). IJs have broad discretion in deciding whether to release an alien on bond. *Matter of Guerra*, 24 I. & N. Dec. 37, 39–40 (BIA 2006) (listing nine factors for IJs to consider).

Until recently, the government interpreted § 1226(a) to be an available detention authority for aliens PWAP placed directly in full removal proceedings under § 1229a. *See, e.g.*, *Ortega-Cervantes*, 501 F.3d at 1116. In view of legal developments, the government has determined that this interpretation was incorrect. But prior agency practice applying § 1226(a) in similar contexts does not control because the plain language of the statute, and not prior practice, controls. *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225-26 (BIA 2025); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 408, 431-32 (2024) (explaining that "the basic nature and meaning of a statute does not change . . . just because the agency has happened to offer its interpretation through the sort of procedures necessary to obtain deference" and finding that the weight given to agency interpretations "must always "depend upon the[ir] thoroughness. . ., the validity of [their] reasoning, [their] consistency with earlier and later pronouncements, and all those factors which give [them] power to persuade '"). Section 1225 is the sole applicable immigration detention authority for *all* applicants for admission. *See Jennings*, 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded."). In *Jennings*,

---

[1] Being "conditionally paroled under the authority of § 1226(a)" is distinct from being "paroled into the United States under the authority of § 1182(d)(5)(A)." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007) (holding that because release on "conditional parole" under § 1226(a) is not a parole, the alien was not eligible for adjustment of status under § 1255(a)).

the Supreme Court explained that 8 U.S.C. § 1225(b) applies to all applicants for admission, noting that the language of 8 U.S.C. § 1225(b)(2) is "quite clear" and "unequivocally mandate[s]" detention. 583 U.S. at 300, 303 (explaining that "the word 'shall' usually connotes a requirement" (quoting *Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 171 (2016))). Similarly, the Attorney General, in *Matter of M-S-*, unequivocally recognized that 8 U.S.C. §§ 1225 and 1226(a) do not overlap but describe "different classes of aliens." 27 I&N Dec. at 516. The Attorney General also held—in an analogous context—that aliens present without admission and placed into expedited removal proceedings are detained under 8 U.S.C. § 1225 even if later placed in 8 U.S.C. § 1229a removal proceedings. *Matter of M-S-*, 27 I&N Dec. at 518-19. In *Matter of Q. Li*, the Board of Immigration Appeals ("BIA") held that an alien who illegally crossed into the United States between ports of entry and was apprehended without a warrant while arriving is detained under 8 U.S.C. § 1225(b). 29 I&N Dec. at 71. The BIA recently resolved the question of whether an alien PWAP released from DHS custody pursuant to INA § 236(a) is an applicant for admission detained under INA § 235(b)(2)(A) in the affirmative. *Matter of Yajure Hurtado*, 29 I&N Dec. 216.

This ongoing evolution of the law makes clear that all applicants for admission are subject to detention under 8 U.S.C. § 1225(b). *Cf. Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021) (providing that "no amount of policy-talk can overcome a plain statutory command"); *see generally Florida v. United States*, 660 F. Supp. 3d 1239, 1275 (N.D. Fla. 2023) (explaining that "the 1996 expansion of § 1225(b) to include illegal border crossers would make little sense if DHS retained discretion to apply § 1226(a) and release illegal border crossers whenever the agency saw fit").[2] *Florida's* conclusion "that § 1225(b)'s 'shall be detained' means what it says and . . . is a mandatory requirement . . . flows directly from *Jennings*." *Florida*, 660 F. Supp. 3d at 1273.

---

[2] Though not binding, the U.S. District Court for the Northern District of Florida's decision is instructive here. *Florida* held that 8 U.S.C. § 1225(b) mandates detention of applicants for admission throughout removal proceedings, rejecting the assertion that DHS has discretion to choose to detain an applicant for admission under either 8 U.S.C. §§ 1225(b) or 1226(a). 660 F. Supp. 3d at 1275. The court held that such discretion "would render mandatory detention under 8 U.S.C. § 1225(b) meaningless." *Id.*

RESPONDENTS' OPPOSITION TO MOTION FOR TRO
3:25-cv-09837                                              5

### III.     FACTUAL BACKGROUND

In 1988, Petitioner entered the United States without inspection, admission, or parole at or near Nogales, Arizona. Declaration of Deportation Officer Calvin Choi ("Choi Decl.") ¶ 6. On March 17, 2022, Petitioner filed a Form I-485, Application to Register Permanent Residence or Adjust Status with U.S. Citizenship and Immigration Services. *Id.* ¶ 7. After USCIS denied Petitioner's Form I-485, ICE determined that Petitioner is subject to mandatory detention and took Petitioner into custody on November 14, 2025. *Id.* ¶¶ 8, 10 & Exh. 1. That same day, DHS served Petitioner with a Notice to Appear in removal proceedings as an alien present without admission or parole and charged him as removable. *Id.* ¶ 8 & Exh. 2. Petitioner remains in custody at ICE's California City Detention Center. *Id.* ¶ 9. Petitioner's initial hearing in removal proceedings is set for December 1, 2025. *Id.* ¶ 9 & Exh. 3.

### IV.     PROCEDURAL BACKGROUND

Petitioner commenced this action on November 14, 2025, by filing a petition for writ of habeas corpus, Dkt. No. 1. Later that day, Petitioner filed an ex parte motion for a temporary restraining order. Dkt. No. 2. On November 15, 2025, this Court issued an order requiring Respondents to respond to the motion for a temporary restraining order by November 17, 2025, at 5:00 PM. Dkt. No. 3.

### V.     ARGUMENT

#### A.     Legal Standard

The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). To obtain relief, the moving party must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

The purpose of a preliminary injunction is to preserve the status quo pending final judgment rather than to obtain a preliminary adjudication on the merits. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*,

739 F.2d 1415, 1422 (9th Cir. 1984). "A preliminary injunction can take two forms." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009). "A prohibitory injunction prohibits a party from taking action and 'preserves the status quo pending a determination of the action on the merits.'" *Id*. (internal quotation omitted). "A mandatory injunction orders a responsible party to take action." *Id*. at 879 (internal quotation omitted). "A mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored." *Id*. "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Id*. Where plaintiffs seek a mandatory injunction, "courts should be extremely cautious." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (internal quotation omitted). The moving party "must establish that the law and facts *clearly favor* [their] position, not simply that [they are] likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis original). Courts have also denied preliminary relief where the relief the plaintiff seeks is the same relief sought on the merits, because "[j]udgment on the merits in the guise of preliminary relief is a highly inappropriate result." *Mendez v. ICE*, No. 23-cv-00829-TLT, 2023 WL 2604585, at *3 (N.D. Cal. Mar. 15, 2023) (quoting *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992)).

**B.       Petitioner Cannot Show a Likelihood of Success on the Merits**

**1.       Under the Plain Text of § 1225, Petitioner Must Be Detained Pending the Outcome of His Removal Proceedings**

Petitioner cannot show a likelihood of success on his claim that he is entitled to release because Petitioner is, twice over, an "applicant[] for admission." First, Petitioner is an applicant for admission owing to his presence in the United States without having been either "admitted or paroled." Second, Petitioner is an applicant for admission because, as he acknowledges in his petition, he applied for admission as a permanent resident. Thus, Petitioner is subject to the mandatory detention framework of 8 U.S.C. § 1225(b)(2) and not the general provisions of § 1226(a).

Recent BIA authority confirms that Petitioner is subject to mandatory detention under § 1225(b)(2). In *Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (BIA 2025) , the BIA held that, based on the plain text of the statute, an alien who entered without inspection remains an "applicant for admission" who is "seeking

admission," and is therefore subject to mandatory detention without a bond hearing, even if that alien has been present in the U.S. for years. *Id.*, slip op. at 220. Thus, the BIA held that IJs lack authority to hold bond hearings for aliens in such circumstances. *Id.* The BIA considered, and rejected, the individual's argument that the government's "'longstanding practice' of treating aliens who are present in the United States without inspection as detained under [] 8 U.S.C.A. § 1226(a), and therefore eligible for a bond." *Id.* at 225. Citing the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the BIA explained that such a practice could be relevant where the statute is "doubtful and ambiguous," but here, "the statutory text of the INA . . . is instead clear and explicit in requiring mandatory detention of all aliens who are applicants for admission, without regard to how many years the alien has been residing in the United States without lawful status." *Hurtado*, slip op. at 226. Nor did it matter that "DHS [had] issued an arrest warrant in conjunction with the Notice to Appear and a Notice of Custody Determination": "the mere issuance of an arrest warrant does not endow an [IJ] with authority to set bond for an alien who falls under section 235(b)(2)(A) of the INA . . . If it did, it would render meaningless the many prohibitions cited above on the authority of an [IJ] to set bond." *Id.* at 227 (citing, *e.g.*, *Matter of Q. Li*, 29 I&N Dec. 66, 69 (BIA 2025)). The BIA has therefore now confirmed, in a decision binding on IJs nationwide, what the government is arguing here: individuals such as Petitioner are "applicants for admission" subject to mandatory detention under § 1225(b), and have no right to a bond hearing, let alone release.

Respondents recognize that recent district court preliminary injunction decisions in this district have concluded that § 1225(b) is not applicable to aliens who previously had been conditionally released by the United States under § 1226(a).[3] However, these non-binding decisions are irrelevant to this Petitioner's habeas claim. Petitioner has *never* been detained or conditionally released pursuant to § 1226(a). He thus cannot claim to have the liberty interest found by the courts in those cases. *Salcedo Aceros v. Kaiser, et al.*, 2025 WL 2637503, at *11 (A "noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody."); *see also Thuraissigiam*, 591 U.S. at 107 ("Respondent

___

[3] *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Jimenez Garcia v. Kaiser*, No. 4:25-cv-06916-YGR (N.D. Cal. Aug. 29, 2025); *Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); *Salcedo Aceros v. Kaiser*, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025).

RESPONDENTS' OPPOSITION TO MOTION FOR TRO
3:25-cv-09837                                                    8

attempted to enter the country illegally and was apprehended just 25 yards from the border. He therefore has no entitlement to procedural rights other than those afforded by statute.")

Further, those non-binding decisions do not grapple with the textual argument that the BIA just held was "clear and explicit." *Hurtado*, slip op. at 226. Taken together, the plain language of §§ 1225(a) and 1225(b) indicate that applicants for admission, including those "present" in the U.S.—like Petitioner—are subject to mandatory detention under Section 1225(b). When there is "an irreconcilable conflict in two legal provisions," then "the specific governs over the general." *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1015 (9th Cir. 2017). While § 1226(a) applies generally to aliens who are "arrested and detained pending a decision on" removal, § 1225 applies more narrowly to "applicants for admission"—*i.e.*, aliens present in the United States who have not been admitted and those who have submitted applications for admission. Because Petitioner falls within this latter category, the specific detention authority under § 1225 controls over the general authority found at § 1226(a). [4]

As an alien PWAP subject to mandatory detention under § 1225(b), Petitioner is not entitled to custody redetermination at any time, let alone release. *Jennings*, 583 U.S. at 297 ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."); *Matter of Yajure Hurtado*, I&N Dec. at 229 (holding that immigration judge "lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A)").

### 2. A Narrow Interpretation of "Seeking Admission" Runs Counter to Congress's Use of the Phrase "Or Otherwise" in § 1225(a)(3)

Numerous courts in this district have dismissed the government's construction of § 1225(b), but none of these courts has considered the significance of Congress's use of "or otherwise" language in § 1225(a)(3) when interpreting § 1225(b)(2). While these courts have narrowly construed the "seeking admission" language in § 1225(b)(2) to encompass a subset of applicants for admission who are actively seeking admission, *see, e.g.*,

---

[4] Respondents respectfully disagree with recent decisions narrowing § 1225(b) to apply only to noncitizens "seeking admission." *Salcedo Aceros v. Kaiser, et al.*, 2025 WL 2637503, at \*17 (N. D. Cal. Sept. 12, 2025) (Chen, J.). But even this interpretation bolsters Respondents' argument that § 1225(b) governs here because Petitioner is "seeking admission" and the *only* detention authority that has ever been applied to Petitioner is § 1225(b).

*Salcedo Aceros*, 2025 WL 2637503 at *10, their textual analysis has not squared their conclusion with the one provision elsewhere in § 1225 where Congress expressly explained the relationship between "seeking admission" and "applicants for admission"—that is, § 1225(a)(3). The government posits that the starting point for understanding what "seeking admission" in § 1225(b) means is the language of § 1225(a)(3).

In § 1225(a)(3), Congress provided:

> All aliens (including alien crewmen) who are applicants for admission *or otherwise seeking admission or readmission to or transit through the United States* shall be inspected by immigration officers.

8 U.S.C. § 1225(a)(3) (emphasis added). This use of "or otherwise" to connect terms is a familiar legal construction where the specific items that precede that phrase are meant to be subsumed by what comes after it. *See, e.g.*, *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963-64 (11th Cir. 2016) (*en banc*) (noting four Congressional statutes and three 11th Circuit procedural rules as exemplary of how the phrase "or otherwise" is to be construed such that "the first action is a subset of the second action"); *cf. Patrick's Payroll Servs., Inc. v. Comm'r of Internal Revenue*, 848 F. App'x 181, 183-84 (6th Cir. 2021) (interpreting the "plain meaning and ordinary usage of the phrase 'or did not otherwise'" to mean that what immediately preceded the phrase was "one of the most common examples" of what followed it). As such, "or otherwise" operates as a catch-all category that serves to make clear that what precedes that phrase falls within the larger category that follows. *See Kleber v. CareFusion Corp.*, 914 F.3d 480, 482-83 (7th Cir. 2019) (analyzing the "or otherwise" phrase in a Congressional statute and determining that Congress's "word choice is significant" in that it "employ[s] a catchall formulation"); *see also* A*l Otro Lado v. Executive Office for Immigration Review*, 138 F.4th 1102, 1119 (2025) (finding that in 8 U.S.C. §§ 1225(a)(2) and (a)(3) "Congress took care to provide for the inspection of both the *catch-all category of noncitizens 'otherwise seeking admission'* and stowaways") (emphasis added).[5] The catch-all formulation does not render the phrase preceding "or otherwise" superfluous since "the specific items that precede it *are meant* to be subsumed by what comes after the 'or otherwise.'" *Villarreal*, 839 F.3d at 964 (emphasis in original) (citing *Begay v. United States*, 553 U.S. 137, 153 (2008) (Scalia, J., concurring)

_____

[5] *Fischer v. United States*, 603 U.S. 480 (2024), which addressed the import of "otherwise" on the preceding subsection's list of criminal violations, does not change the calculus. The Court did not consider—as here—the use of "or otherwise" connecting two surrounding phrases and, in any event, found—in a situation unlike here—that a list of "many specific examples of prohibited actions" in a prior subsection merely defined the scope of the following "residual clause" to "give it more definite meaning." *Id*. at 489-91.

("[T]he canon against surplusage has substantially less force when it comes to interpreting a broad residual clause. . . .")). To treat what follows "or otherwise" and what precedes it "as separate categories, does not give effect to every word because it reads 'otherwise' out of the statute." *Villarreal*, 839 F.3d at 964. To that end, Congress's use of "otherwise" immediately after "or" is textually significant since using the disjunctive word "or" by itself would have suggested a different interpretation "indicat[ing] alternatives and requir[ing] that those alternatives be treated separately." *Id.*

The import of these statutory construction rules is meaningful as applied to § 1225. First, given Congress's use of "or otherwise" instead of "or," "applicant for admission" and "seeking admission" are not separate requirements, as previously held by other courts in this district. *See, e.g.*, *Salcedo Aceros*, 2025 WL 2637503 at *10. Second, based on the plain language of § 1225(a)(3), an "applicant for admission" is a subset of the larger category of aliens that are "seeking admission or readmission to or transit through the United States." This interpretation necessarily flows from two word choices made by Congress: (1) its use of the word "or" to disjunctively join "admission," "readmission" and "transit" as modifiers of the word "seeking" to create a broad catch-all category and (2) its use of "or otherwise" to define the relationship between the phrase "applicant for admission" that precedes it and the phrase "seeking admission or readmission to or transit through the United States" that follows it. Third, by so choosing its words, Congress did not describe "seeking admission" as a narrow subset of "applicants for admission." On the contrary, since "applicant for admission" is a subset of the larger category of "seeking admission or readmission to or transit through the United States," 8 U.S.C. § 1225(a)(3), the plain language of § 1225(b)(2) indicates only that, "in the case of an applicant for admission," Congress did not extend that subsection's detention authority to individuals "seeking readmission" and "seeking transit through." It does not follow, however, that the remaining phrase "seeking admission" was meant to be narrower than "applicant for admission"—a point confirmed by the Ninth Circuit in its recent *en banc* decision in *Al Otro Lado*.

In *Al Otro Lado*, the Ninth Circuit compared the "applicant for admission" provision in § 1225(a)(1), which deems an "applicant for admission" to be "[a]n alien present in the United States who has not been admitted or who arrives in the United States," with the INA's asylum provision in 8 U.S.C. § 1158(a)(1), which utilizes similar language providing that an "[a]ny alien who is physically present in the United States or who

RESPONDENTS' OPPOSITION TO MOTION FOR TRO
3:25-cv-09837                                   11

arrives in the United States . . . may apply for asylum." 138 F.4th at 1118-19. The Ninth Circuit did not find that "seeking admission" is a subset of "applicants for admission." Instead, the Ninth Circuit found that "seeking admission" is at least as broad as "applicant for admission." *Id.* at 1119 (concluding that "§ 1225(a)(1) is *solely* about people *seeking admission* to the country") (emphasis added). This finding is consistent with the fact that the INA provides other instances of individuals who are seeking admission but who do not fulfill the criteria for an "applicant for admission" since they are either not present in the United States or admitted. *See, e.g.*, *Ogbolumani v. U.S. Citizenship & Immigr. Servs.*, 523 F. Supp. 2d 864, 869 (N.D. Ill. 2007) (describing visa applicant *at an American Embassy or Consulate abroad* as seeking admission); *Matter of Lemus-Losa*, 25 I&N Dec. 734, 741 (BIA 2012) (an alien "can 'seek admission' from anywhere in the world, for 'example by applying for a visa at a consulate abroad'"); *see also* 8 U.S.C. § 1101(a)(13)(ii), (iv) (noting two circumstances where an alien *lawfully admitted* for permanent residence can be regarded as "seeking an admission").

### 3.    "Seeking Admission" Is Not Limited to Aliens Who Take Action Toward Admission

At least one court in this district has found that "applicant for admission" is broader than "seeking admission" because it covers "someone who is not 'admitted' but is not *necessarily* 'seeking admission.'" *See Salcedo Aceros*, 2025 WL 2637503 at *11 (emphasis in original). As the argument goes, § 1225(b)(2) covers only a smaller set of aliens "actively seeking admission." But "seeking admission" is not a subcategory of "applicants for admission" referring only to aliens necessarily taking steps toward actual admission.

"Seeking admission" is a term of art. *Matter of Lemus-Losa*, 25 I&N at 743 n.6 (BIA 2012). The INA provides that "many people who are not actually requesting permission to enter the United States in the ordinary sense [including aliens present who have not been admitted] are nevertheless deemed to be 'seeking admission' under immigration laws." *Id.* at 743; *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 221 (BIA 2025); *see also Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015). The INA provides numerous examples of Congress using "seeks admission" to mean something more expansive than seeking an actual admission. *See, e.g.*, 8 U.S.C. § 1182(a)(9)(A) (an alien previously ordered removed and "who again seeks admission within 5 years" is inadmissible); 8 U.S.C. § 1182(a)(9)(B) (an alien unlawfully present for more than 180 days but less than a year who voluntarily departed and "again seeks admission within 3 years" is inadmissible). These latter two groups

of aliens accrued past periods of "unlawful presence" in the United States and thus were deemed "applicants for admission" under § 1225(a)(1), but they were also "in a very meaningful (if sometimes artificial) sense, 'again seek[ing] admission.'" *Matter of Lemus-Losa*, 25 I&N at 743 n.6. Accordingly, Congress's use of "seeking admission" in § 1225(b)(2) did not mean to include only aliens who are "actually" or "necessarily" seeking admission.

In any event, Petitioner here is *actively* seeking admission. In March 2022, Petitioner filed an I-485 Application to Register Permanent Residence or Adjust Status, actively seeking admission to the United States. Therefore, even if interpreted narrowly, Petitioner is subject to 1225(b)(2) mandatory detention.

### 4. To Apply § 1225(b)(2) Narrowly to "Arriving Aliens" Runs Counter to Congress's Specific Use of "Arriving Aliens" Elsewhere in § 1225

At least one court in this district has also concluded that "seeking admission" in § 1225(b)(2) applies narrowly to "arriving aliens." *See Salcedo Aceros*, 2025 WL 2637503 at *10, 11. Similarly, petitioners' counsel in this district have referred to § 1225(b)(2) as an "arriving alien statute." *See Salcedo Aceros*, 2025 WL 2637503, ECF No. 24 (September 4, 2025 Hearing Tr.) at 14:10, 23:4-5, 25:1-2. But "where Congress knows how to say something but chooses not to, its silence is controlling." *In re Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000) (holding that "Congress must have consciously chosen not to include the language 'or the payment thereof'" in one statutory section when it specifically chose to use that language in a different section); *see also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994) ("'[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another'"). Congress knew how to use the word "arriving" and, to that end, twice included that word elsewhere in the *same* statutory section, both in the text and title of § 1225's expedited removal provision. *See* 8 U.S.C. § 1225(b)(1) ("Inspection of aliens *arriving* in the United States and certain other aliens who have not been admitted or paroled") (emphasis added); 8 U.S.C. § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . who is *arriving* in the United States") (emphasis added). Congress's decision not to use "arriving"—or any variant thereof—in § 1225(b)(2) was purposeful, and that word cannot now be read into that provision to unnecessarily limit Congress' express language. Accordingly, § 1225(b)(2) is not limited to aliens arriving at the border; it also covers aliens in the country's interior who are present and not admitted. *See, e.g.*,

*Pena v. Hyde*, No. CV 25-11983-NMG, 2025 WL 2108913, *1-3 (D. Mass. July 28, 2025) (holding that an alien living in the country and later detained after a traffic stop "remains an applicant for admission" and "his continued detention is therefore authorized by § 1225(b)(2)(A)" consistent with constitutional due process); *Sixtos Chavez, et al. v. Kristi Noem, et al.*, No. 3:25-cv-02325-CAB-SBC (S.D. Cal. Sep. 24, 2025), ECF No. 8 (denying application for temporary restraining order and rejecting petitioners' argument that their detention was governed by § 1226, finding instead that they were subject to mandatory detention under the plain text of § 1225(b)(2)).

**5.    The INA's Implementing Regulations Are Contrary to the Court's Narrow View That § 1225(b)(2) Applies Only to Arriving Aliens**

At least one court in this district has relied upon "the implementing regulation for § 1225(b)(2)" to bolster its conclusion that this statutory section "has limited application" and applies only to an "arriving aliens" subset of applicants for admission. *Salcedo Aceros*, 2025 WL 2637503 at *10 ("8 C.F.R. § 235.3 describes Section 1225(b)(2) as applying to 'any *arriving alien* who appears to the inspecting officer to be inadmissible.") (emphasis in original). However, this regulation does not support that narrow construction. It provides that the expedited removal provision of § 1225(b)(1) applies to "arriving aliens," 8 C.F.R. § 235.3(b)(1)(i), and that an arriving alien can be put into regular removal proceedings, 8 C.F.R. § 235.3(c)(1). But most significantly, the regulations expressly provide that § 1225(b)(2) is *not* limited to arriving aliens:

> An alien who was not inspected and *admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2–year period immediately prior to the date of determination of inadmissibility* shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act.

8 C.F.R. § 235.3(b)(1)(ii) (emphasis added). This implementing regulation applies § 1225(b)(2) to aliens just like Petitioner, who has been in the United States for 37 years. The regulation undermines the narrow interpretation that § 1225(b)(2) is limited to aliens arriving at the border.

Even if the Court were inclined to narrowly equate "seeking admission" with an alien who is necessarily taking a step toward legal status in the United States, Petitioner meets this narrow construction of "seeking admission" because in March 2022 he actively sought admission to the United States by applying for permanent residence. As such, he qualifies for mandatory detention under § 1225(b)(2).

RESPONDENTS' OPPOSITION TO MOTION FOR TRO
3:25-cv-09837                           14

### 6.    Petitioner Does Not Have a Liberty Interest Here

Given his status as an applicant for admission subject to mandatory detention, Petitioner rightly does not rely on *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As an initial matter, the Supreme Court has upheld mandatory civil immigration detention without utilizing the multi-factor "balancing test" of *Mathews*. *See Demore v. Kim*, 538 U.S. 510 (2003) (upholding mandatory detention under 8 U.S.C. § 1226(c)); *cf. Zadvydas v. Davis*, 533 U.S. 678 (2001) (upholding mandatory detention under 8 U.S.C. § 1231(a)(6) for six months after the 90-day removal period).[6]

In any event, applicants for admission like Petitioner, who were not admitted or paroled into the country, lack a liberty interest in *additional* procedures including a custody redetermination or pre-detention bond hearing. And unlike aliens who were previous detained and released on conditional parole, Petitioner did not develop a liberty interest by living in the U.S. illegally for 37 years. *Salcedo Aceros v. Kaiser, et al.*, 2025 WL 2637503, at *11 (A "noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody."). Indeed, courts have held that even aliens on conditional parole are not entitled to additional rights above and beyond the specific process already provided by Congress in § 1225. *See Thuraissigiam*, 591 U.S. at 139 ("aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border'"); *Ma v. Barber*, 357 U.S. 185, 190 (1958) (concluding that the parole of an alien released into the country while admissibility decision was pending did not alter her legal status); *Pena,* 2025 WL 2108913 at *2 (finding that mandatory detention under § 1225(b)(2)(A) of an alien arrested at a traffic stop in the interior of the United States "comports with due process"). Petitioner is entitled only to the protections set forth by statute, and "the Due Process Clause provides nothing more." *Thuraissigiam*, 591 U.S. at 140.

That Petitioner submitted a Form I-485 in March 2022 does not give rise to a liberty interest. In *Ayanian v. Garland*, 64 F.4th 1074 (9th Cir. 2023), the Ninth Circuit, citing the USCIS Policy Manual,

---

[6] As the Ninth Circuit recognized in *Rodriguez Diaz*, "the Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1206 (9th Cir. 2022) (citations omitted). Whether the *Mathews* test applies in this context is an open question in the Ninth Circuit.  *See Rodriguez Diaz*, 53 F.4th at 1207 (applying *Mathews* factors to uphold constitutionality of Section 1226(a) procedures in a prolonged detention context; "we assume without deciding that *Mathews* applies here").

reiterated that "[a] pending application for adjustment of status 'does not confer lawful immigration status on an applicant.'" *Ayanian*, 64 F.4th at 1082 (citing 7 USCIS-PM B.3(E)). Accordingly, an individual with a pending application "'may be subject to removal proceedings unless and until the . . . adjustment application . . . is approved." *Id.* The *Ayanian* Court cited an earlier Ninth Circuit decision, *United States v. Latu*, 479 F.3d 1153 (9th Cir. 2007), which similarly held that a "'pending I-485 application for adjustment of status d[oes] not affect . . . removability.'" *Ayanian*, 64 F.4th at 1082 (citing *Latu*, 479 F.3d at 1155). Thus, because a pending application for adjustment of status does not confer lawful status it follows that it does not also give rise to a liberty interest.

**7.    Congress Did Not Intend to Treat Individuals Who Unlawfully Enter the Country Better than Those Who Appear at a Port of Entry**

When the plain text of a statute is clear, "that meaning is controlling" and courts "need not examine legislative history." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 848 (9th Cir. 2011). But to the extent legislative history is relevant here, nothing "refutes the plain language" of § 1225. *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011).

Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 to correct "an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc). It "intended to replace certain aspects of the [then] current 'entry doctrine,' under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry." *Id.* (quoting H.R. Rep. 104-469, pt. 1, at 225). For that reason, Petitioner—who entered the United States without inspection—should be treated no differently than noncitizens who present at a port of entry and are subject to mandatory detention under § 1225, including pending further consideration of their applications for asylum. *See* 8 U.S.C. § 1225(b)(1)(B)(ii). To hold that Petitioner is entitled to release pending removal proceedings while an arriving alien also in removal proceedings is subject to mandatory detention would create the perverse incentive for aliens to enter the country unlawfully—or surreptitiously get access to the country's interior— rather than enter at a lawful location. *See Thuraissigiam*, 591 U.S. at 140.

### 8.   Petitioner Cannot Establish Irreparable Harm

Petitioner does not establish that he will be irreparably harmed absent a TRO. The deprivation of physical liberty is a harm that "is essentially inherent in detention," and thus "the Court cannot weigh this strongly in favor of" Petitioner. *Lopez Reyes v. Bonnar*, No 18-cv-07429-SK, 2018 WL 7474861 at *10 (N.D. Cal. Dec. 24, 2018). It is also countervailed by authority mandating—and upholding—his categorical detention as lawful.

Indeed, the alleged infringement of constitutional rights is insufficient where, as here, a petitioner fails to demonstrate "'a sufficient likelihood of success on the merits of [his] constitutional claims to warrant the grant of a preliminary injunction.'" *Marin All. For Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1160 (N.D. Cal. 2011) (quoting *Assoc'd Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991)); *see also Meneses v. Jennings*, No. 21-cv-07193-JD, 2021 WL 4804293, at *5 (N.D. Cal. Oct. 14, 2021) (denying TRO where petitioner "assume[d] a deprivation to assert the resulting harm").

Further, any alleged harm from the detention alone is insufficient because "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *see also Flores*, 507 U.S. at 306; *Carlson*, 342 U.S. at 538. And as noted by the Ninth Circuit in *Rodriguez Diaz*, if treated as detention under § 1226(a), the risk of erroneous deprivation and value of additional process is small due to the procedural safeguards that Section 1226(a) provides. Contrary to Petitioner's assertion that his detention is "indefinite," Pet. at 4, Petitioner's detention in fact has a clear and definite end point: the conclusion of his removal proceedings. *See Demore*, 538 U.S. at 529 (distinguishing *Zadvydas*). Thus, Petitioner cannot establish that his lawfully authorized mandatory detention would cause irreparable harm.

### 9.   The Balance of Equities and Public Interest Do Not Favor an Injunction

When the government is a party, the balance of equities and public interest merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Further, where a moving party only raises "serious questions going to the merits," the balance of hardships must "tip sharply" in their favor. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th

Cir. 2011) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

Here, the government has a compelling interest in the steady enforcement of its immigration laws. *See, e.g., See Noem v. Vasquez  Perdomo*, 606 U.S. —, 2025 WL 2585637, at *4-5 (2025) (Kavanaugh, J., concurring) (finding that balance of harms and equities tips in favor of the government in immigration enforcement given the "myriad 'significant economic and social problems' caused by illegal immigration"); *Demore*, 538 U.S. at 523; *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (holding that the court "should give due weight to the serious consideration of the public interest" in enacted laws); *see also Ubiquity Press Inc. v. Baran*, No 8:20-cv-01809-JLS-DFM, 2020 WL 8172983, at *4 (C.D. Cal. Dec. 20, 2020) ("the public interest in the United States' enforcement of its immigration laws is high"); *United States v. Arango*, No. CV 09-178 TUC DCB, 2015 WL 11120855, at 2 (D. Ariz. Jan. 7, 2015) (finding that "the Government's interest in enforcing immigration laws is enormous"). Indeed, the government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J.) (citation omitted).

Petitioner's claimed harms cannot outweigh this public interest in the application of the law, particularly since courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citation omitted). While it is "always in the public interest to protect constitutional rights," if, as here, a petitioner has not shown a likelihood of success on the merits of his claim, that public interest does not outweigh the competing public interest in enforcement of existing laws. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The public and governmental interest in applying the established procedures for "applicants for admission," including their lawful, mandatory detention, *see* 8 U.S.C. § 1225(b); *Jennings*, 583 U.S. at 297, is significant.

**C.      Any Court Order Should Not Provide for Immediate Release and Should Not Reverse the Burden of Proof**

Immediate release is improper in these circumstances, where Petitioner is subject to mandatory detention. If the Court is inclined to grant any relief whatsoever, such relief should be limited to providing

RESPONDENTS' OPPOSITION TO MOTION FOR TRO
3:25-cv-09837                                                    18

Petitioner with a bond hearing while he remains detained. *See, e.g.*, *Javier Ceja Gonzalez v. Noem*, No. 5:25-cv-02054-ODW (C.D. Cal. Aug. 13, 2025), ECF No. 12 (ordering the government to "release Petitioners or, in the alternative, provide each Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days of this Order").

Moreover, at any bond hearing, Petitioner should have the burden of demonstrating that he is *not* a flight risk or danger to the community. That is the ordinary standard applied in bond hearings. *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006) ("The burden is on the alien to show to the satisfaction of the [IJ] that he or she merits release on bond."). It would be improper to reverse the burden of proof and place it on the government in these circumstances. *See Rodriguez Diaz*, 53 F.4th at 1210-12 ("Nothing in this record suggests that placing the burden of proof on the government was constitutionally necessary to minimize the risk of error, much less that such burden-shifting would be constitutionally necessary in all, most, or many cases.").

The Ninth Circuit previously held that the government bears the burden by clear and convincing evidence that an alien is not a flight risk or danger to the community for bond hearings in certain circumstances. *Singh v. Holder*, 638 F.3d 1196, 1203-05 (9th Cir. 2011) (bond hearing after allegedly prolonged detention). But following intervening Supreme Court decisions, the Ninth Circuit has explained that "*Singh's* holding about the appropriate procedures for those bond hearings . . . was expressly premised on the (now incorrect) assumption that these hearings were statutorily authorized." *Rodriguez Diaz*, 53 F.4th at 1196, 1200-01 (citing *Jennings*, 583 U.S. 281, and *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022)). Thus, the prior Ninth Circuit decisions imposing such a requirement are "no longer good law" on this issue, *Rodriguez Diaz*, 53 F.4th at 1196, and the Court should follow *Rodriguez Diaz* and the Supreme Court cases.

## VI.    CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court decline to enter a TRO or a preliminary injunction.

Dated: November 17, 2025                              Respectfully submitted,

                                                      CRAIG H. MISSAKIAN
                                                      United States Attorney

RESPONDENTS' OPPOSITION TO MOTION FOR TRO
3:25-cv-09837                                                    19

_/s/ William Skewes-Cox_
WILLIAM SKEWES-COX
Special Assistant United States Attorney

Attorneys for Respondents-Defendants

RESPONDENTS' OPPOSITION TO MOTION FOR TRO
3:25-cv-09837                              20