UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO AMEZQUITA DIAZ,<br><br>Petitioner,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Respondents. | Case No. 3:25-cv-09837-JSC<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 2 |

Before the Court is Petitioner's *Ex Parte* Motion for Temporary Restraining Order. (Dkt. No. 2.) On November 14, 2025, Petitioner filed a Petition for Writ of Habeas Corpus, and an *Ex Parte* Motion for Temporary Restraining Order (TRO) against Sergio Albarran, acting field office director of the San Francisco ICE office; Todd M. Lyons, acting director of ICE; Secretary of the Department of Homeland Security Kristi Noem; and Attorney General Pamela Bondi. (Dkt. Nos. 1, 2.) Petitioner asks this Court to (1) order his immediate release from Respondents' custody pending these proceedings, and (2) enjoin Respondents from re-detaining him without a hearing before an Immigration Judge. (Dkt. No. 2.) Having considered the briefing and relevant legal authority, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS the TRO in part.

## BACKGROUND

According to the record before the Court, Petitioner has lived in the United States for 30 years and has two U.S. citizen children. (Dkt. No. 2 at 4.) He has a United States Citizenship and Immigration Services (USCIS) approved employment authorization (EAD card) and works full-time at Costco. (*Id.*) In 2022, his daughter filed an adjustment of status I-485 application on his behalf. (*Id.*) On November 14, 2025, Petitioner appeared for his scheduled 245i Adjustment of

1  Status interview at the San Francisco USCIS office. (Dkt. No. 2-2 at ¶ 3.) At the end of the
2  interview, "the adjudicating officer had [Petitioner] sign off on the changes he made to his I-485"
3  and then "Section Chief James Berger of the San Francisco USCOS office entered the room along
4  with four ICE officers." (*Id*. at ¶ 4.) Petitioner was handcuffed and taken into custody. (*Id*.)
5  Petitioner's counsel was not shown a warrant. (*Id.*)

      According to the declaration of one of these ICE officers, Calvin Choi, Petitioner's I-485 application was denied on November 14, 2025 and then Petitioner was served with a Notice to Appear, taken into custody, and placed in deportation proceedings. (Dkt. No. 9-1 at ¶ 8.) Petitioner is currently being detained at the California City Detention Center with his next Immigration Court hearing scheduled for December 1, 2025. (*Id*. at ¶ 9.) According to the attached Notice to Appear, Petitioner was placed in removal proceedings pursuant to INA 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)) as a noncitizen not admitted or paroled in the United States). (Dkt. No. 9-2 at 3.) The Notice to Appeal states his I-130 petition, which was filed the same day as his I-485 application, remains pending. (*Id*.)

      This Petition was filed on November 14, 2025 and the TRO was filed the following day. (Dkt. Nos. 1, 2.) Petitioner contends that his arrest and detention violate the Due Process Clause of the Fifth Amendment, both substantively (because Respondents allegedly have no valid interest in detaining him) and procedurally (because he was not provided with a pre-detention bond hearing). Because the TRO was filed on the weekend Petitioner's counsel was unable to provide notice to Respondents' counsel. (Dkt. No. 2-2 at ¶ 8.) Upon receipt of the TRO on Saturday, November 15, 2025, the court ordered Respondents to file a response by 5:00 p.m. on November 17, 2025. (Dkt. No. 3.) Respondents have since done so. (Dkt. No. 9.)

## LEGAL STANDARD

      The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in

the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up) (emphasis in original). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## DISCUSSION

Petitioner was detained following his adjustment of status interview based on the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) as requiring mandatory detention for all noncitizens charged with entering the United States without lawful admission. (Dkt. No. 9-1 at ¶ 10; Dkt. No. 9 at 12-19.) Petitioner's detention under this provision, rather than under 8 U.S.C. § 1226(a), reflects a recent executive branch policy change directing federal immigration officials to seek expedited removal of a larger swath of noncitizens by classifying all noncitizens present in the United States as "applicant[s] for admission" under Section 1225. *See Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *1–4 (N.D. Cal. Sept 12, 2025) (describing this policy change). This is one of numerous cases addressing the same issue and courts have nearly uniformly rejected the government's contention that individuals, such as Petitioner, who are detained following years of residency within the United States are subject to mandatory detention under Section 1225(b)(2)(A). *See, e.g.*, *Morillo v. Albarran*, No. 1:25-CV-01533-DJC-AC, 2025 WL 3190899, at *3 (E.D. Cal. Nov. 15, 2025) (rejecting the government's

argument as to mandatory detention under Section 1225(b)(2)(A) and finding the "applicability of these provisions is governed by when and where a noncitizen encounters immigration enforcement officials" because "[c]ourts in this Circuit have found that Section 1225 applies to those apprehended upon arrival to the United States while Section 1226 applies to those already living within the United States"); *J.A.C.P. v. Wofford*, No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at *4 (E.D. Cal. Oct. 27, 2025) (concluding that while "petitioner could be considered an 'applicant for admission' because he is an 'alien present in the United States who has not been admitted,' as defined at 8 U.S.C. § 1225(a)(1), the government has failed to show that, over 3 years after he entered the country, petitioner was actively 'seeking admission'" when he was detained on a public street without a warrant); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases concluding Section 1225(b)(2) "applies only to noncitizens 'seeking admission'" and not those living in the interior of the country"). *But see Valencia v. Chestnut*, No. 1:25-CV-01550 WBS JDP, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (finding petitioner unlikely to succeed on the merits of his claim that his detention should be governed by 1226(a) rather than 1225(b)(2)).

At a minimum, Petitioner has demonstrated his Petition raises serious legal questions regarding the applicability of Section 1225(b)(2) to his situation and that his ongoing detention violates his procedural due process rights under the Fifth Amendment. Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005).

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-

01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to the government is minimal." *Pablo Sequen v. Kaiser*, No. 25-CV-06487-PCP, 2025 WL 2203419, at *3 (N.D. Cal. Aug. 1, 2025). If the government ultimately prevails, at most it faces is a short delay in detaining Petitioner which is minimal harm, especially since Petitioner has been working full-time under government authorization. *Salcedo Aceros*, 2025 WL 2637503, at *14. The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

A TRO immediately releasing Petitioner is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO is granted as detailed below. This Order accords with many other recent grants of temporary relief in similar circumstances. *See, e.g.*, *Morillo*, 2025 WL 3190899, at *4 (granting TRO concluding "[a]s Petitioner has been present in the United

5

1   States for 19 years (Reply at 2), he is likely to succeed on the merits of his claim that he is

2   unlawfully detained under Section 1225(b)(2)'s mandatory detention provision."); *J.A.C.P.*, 2025

3   WL 3013328, at *7 (holding petitioner was likely to succeed on the merits of their claim that they

4   were not subject to mandatory detention under section 1225(b)(2)(A) under similar

5   circumstances); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025) (granting

6   preliminary injunction finding petitioner "likely to succeed on the merits that he is unlawfully

7   detained under Section 1225(b)(2)'s mandatory detention provision" or that "[a]t the very least,

8   [Petitioner] has raised 'serious questions going to the merits.'"); *Pinchi v. Noem*, No. 25-cv-

9   05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting temporary restraining order

10  requiring release of asylum seeker and a pre-detention bond hearing before re-arrest).

11  Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of

12  bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their]

13  conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is

14  needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . .

15  hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

**ORDER**

For the foregoing reasons, **IT IS ORDERED** that Petitioner's Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents are **ORDERED** to immediately release Petitioner from Respondents' custody and **ENJOINED AND RESTRAINED** from re-detaining Petitioner removing Petitioner from the United States pending further order of the Court. This Order shall remain in effect until **December 2, 2025.**

Respondents are **ORDERED TO SHOW CAUSE** in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, why a preliminary injunction should not issue. The Court construes Respondents' opposition to the temporary restraining order as its opposition to this Order to Show Cause and directs Petitioner to file a response by noon,

1  November 24, 2025.  The Court sets a hearing for December 2, 2025 at 10:00 a.m. via Zoom
2  video.
3      Given the holidays, the parties may stipulate to an extended briefing schedule provided the
4  temporary restraining order remains until disposition of the preliminary injunction.
5      This Order disposes of Docket No. 2.
6      **IT IS SO ORDERED.**
7  Dated: November 18, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge