UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO AMEZQUITA DIAZ,<br><br>Plaintiff,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Defendants. | Case No. 3:25-cv-09837-JSC<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 10 |

Petitioner, who is originally from Mexico, has lived in this country for over 30 years. He currently has an approved I-130 visa petition sponsored by his United States citizen daughter. While at an interview on his concurrently filed application to adjust his status, ICE officers arrested him and took him into custody. Petitioner was detained without a bond hearing based on the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) as requiring mandatory detention during removal proceedings for all noncitizens who entered the United States without lawful admission. Petitioner, through counsel, filed this habeas petition and a motion for a temporary restraining order (TRO). (Dkt. Nos. 1, 2.[1]) The Court granted the TRO, construed the government's response to the TRO as its response to the order to show cause as to why a preliminary injunction should not issue, directed Plaintiff to file a reply, and set the matter for hearing. (Dkt. No. 10.) Having had the benefit of oral argument on December 4, 2025 and after

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

carefully considering the arguments and briefing submitted, the Court GRANTS the motion for a preliminary injunction.

**BACKGROUND**

Petitioner has lived in the United States for at least 30 years and has two United States citizen children. (Dkt. No. 2 at 4.) He has a United States Citizenship and Immigration Services (USCIS) approved employment authorization (EAD card) and works full-time at Costco. (*Id*.) In 2001, Petitioner's United States citizen wife filed an I-130 visa petition on his behalf which was approved on August 28, 2001. (Dkt. No. 14-1 at 9.) In 2022, Petitioner's United States citizen daughter filed another I-130 petition on his behalf and Petitioner concurrently filed an I-485 application to register permanent residence or adjust status. (Dkt. No. 14-1 at 8.) The second I-130 petition was approved on November 14, 2025. (*Id*.)

Also on November 14, 2025, Petitioner appeared at the San Francisco USCIS office for a scheduled 245i Adjustment of Status interview. (Dkt. No. 2-2 at ¶ 3.) At the end of the interview, "the adjudicating officer had [Petitioner] sign off on the changes he made to his I-485" and then "Section Chief James Berger of the San Francisco USCIS office entered the room along with four ICE officers." (*Id*. at ¶ 4.) Petitioner was handcuffed and taken into custody. (*Id*.) Petitioner's counsel was not shown a warrant. (*Id.*) According to the declaration of Calvin Choi, one of the ICE officers present, Petitioner was served with a Notice to Appear, taken into custody, and placed in deportation proceedings. (Dkt. No. 9-1 at ¶ 8.) The Notice to Appear states Petitioner was placed in removal proceedings pursuant to INA 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)) as a noncitizen not admitted or paroled in the United States. (Dkt. No. 9-2 at 3.) Petitioner's initial hearing on his removal proceedings was scheduled for December 1, 2025. (Dkt. No. 9-2 at 10.) It is unclear if this occurred, but Petitioner has now filed a document dated December 1, 2025 stating USCIS has administratively closed his I-485 application to adjust status because he is in removal proceedings. (Dkt. No. 14-1 at 11.)

This Petition was filed on November 14, 2025 and the TRO was filed the following day. (Dkt. Nos. 1, 2.) Petitioner contends his arrest and detention violate the Due Process Clause of the Fifth Amendment, both substantively (because Respondents allegedly have no valid interest in

detaining him) and procedurally (because he was not provided with a pre-detention bond hearing). Because the TRO was filed on the weekend Petitioner's counsel was unable to provide notice to Respondents' counsel. (Dkt. No. 2-2 at ¶ 8.) Upon receipt of the TRO on Saturday, November 15, 2025, the general duty judge ordered Respondents to file a response by 5:00 p.m. on November 17, 2025. (Dkt. No. 3.) Respondents did so and the Court subsequently granted the TRO and converted the briefing into an order to show cause as to why a preliminary injunction should not issue. (Dkt. No. 10.)

## DISCUSSION

To obtain a preliminary injunction, Petitioner must establish that (1) he is "likely to succeed on the merits," (2) he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [his] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "If a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

### A.   Likelihood of Success/Serious Legal Questions

Two statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. §§ 1225 and 1226. Section 1225 governs the detention of noncitizens seeking admission into the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). As relevant here, section 1225(b)(2)(A) provides "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). "A noncitizen detained under

3

[s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, 25-11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025). "Other than this limited exception[,] ... detention under § 1225(b)(2) is considered mandatory ... [and] [i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025). In contrast, a noncitizen detained under § 1226(a) has an initial custody determination before an ICE officer and will be released if he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8).). In addition, "a detainee [under this section] may request a bond hearing before an IJ at any time before a removal order becomes final." *Rodriguez Diaz*, 53 F.4th at 1196 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19.) This right becomes available at the "outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)).

Petitioner was detained following his adjustment of status interview based on the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) as requiring mandatory detention for all noncitizens who entered the United States without lawful admission. (Dkt. No. 9-1 at ¶ 10; Dkt. No. 9 at 12-19.) The government contends anyone present in the United States without being admitted or paroled may be removed by expedited removal under Section 1225(b)(1) or full removal proceedings pursuant to Section 1225(b)(2). According to the government, Petitioner is an applicant for admission "twice over" because he (1) is present without having been admitted or paroled; and (2) has a pending application to adjust his status to that of a permanent resident. (Dkt. No. 9 at 12.)

As discussed in the Court's Order granting the TRO, this is one of multitudes of cases throughout the country addressing this issue—nearly all of which have rejected the government's new contention that individuals, such as Petitioner, who are detained following years of United States residency are subject to mandatory detention under Section 1225(b)(2)(A). *Diaz v. Albarran*, No. 3:25-CV-09837-JSC, 2025 WL 3214972, at *2 (N.D. Cal. Nov. 18, 2025)

4

(collecting cases).² This Court joins these cases, and in particular, adopts the well-reasoned analysis of the court in *Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422 (N.D. Cal. Nov. 25, 2025). *Id.* at *3-5 (granting preliminary injunction finding Section 1225(b) did not provide a statutory basis for detaining the petitioner because it would render a recent amendment to section 1226(c) redundant, would "shrink the discretionary detention provision [of] section 1226[] beyond recognition, and would "wreak havoc" on the decades of "understanding—shared by the Executive and the Supreme Court [] that section 1226, not section 1225, governed immigration arrests conducted within the interior of the United States.").

So, as the Court previously concluded, Petitioner has demonstrated, at a minimum, that his Petition raises serious legal questions regarding the applicability of Section 1225(b)(2) to his situation and re-detaining him without a pre-deprivation hearing would violate his procedural due process rights under the Fifth Amendment.

### B. Irreparable Harm

Petitioner is likely to suffer irreparable harm in the absence of preliminary injunctive relief. While Petitioner is currently out of ICE custody as a result of the Court's TRO order, there is no reason to believe the government will not immediately re-detain him as soon as the TRO expires. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018); *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). Unconstitutional deprivation of liberty satisfies the burden of irreparable harm.

### C. Balance of Hardships and the Public Interest

Lastly, the balance of the equities and the public interest, which merge in this case because

---

² Indeed, every court in this District to consider the government's new interpretation of Section 1225(b) has rejected its application. *See Bautista Pico v. Noem*, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases).

the government is the opposing party, tip sharply in Petitioner's favor. Preventing the violation of constitutional rights serves the public interest. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Specifically, "the public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up).

The only interest asserted by the government is in the "steady enforcement of its immigration laws." (Dkt. No. 9 at 23.) But the only potential injury the government faces is a "short delay" in detaining Petitioner if it "ultimately demonstrates to a neutral decisionmaker" his detention is necessary to prevent flight or danger to the community. *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *14 (N.D. Cal. Sept. 12, 2025). The government provides no explanation as to how holding a pre-detention bond hearing would interfere with the enforcement of its immigration laws. The Court thus concludes the balance of hardships tips sharply in Petitioner's favor.

### D. Remedy

Prior to being re-detained, Petitioner is entitled to a pre-detention hearing, during which a neutral decisionmaker must consider whether Petitioner is either a danger to the community or flight risk such that his physical custody is required. Petitioner makes no argument at to what standard should apply to this determination, but in his conclusion states the government should bear the burden of proving detention is proper based on "clear and convincing evidence." (Dkt. No. 14 at 8.) Given Petitioner's lack of any legal support, the Court declines to impose such a requirement.

## CONCLUSION

Accordingly, Petitioner's motion for preliminary injunction is GRANTED. If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered. This Order shall remain in effect until further order of the Court. The government

does not request, and the Court declines to require, a security.

The parties shall meet and confer and, within 14 days of the date of this Order, propose a schedule for resolving the remainder of this case.

**IT IS SO ORDERED.**

Dated: December 5, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge